UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA RENTERIA GOMEZ,

               Civil Action No. 24-11666

     Plaintiff,

               Shalina D. Kumar
v.              United States District Judge

ROGERS, *et al.*,        David R. Grand
               United States Magistrate Judge

     Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 24)

On June 27, 2024, plaintiff Joshua Gomez ("Gomez"), an inmate of the Michigan Department of Corrections ("MDOC"), filed his *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 against numerous MDOC employees.  (ECF No. 1).

Now before the Court is Defendants' Motion for Summary Judgment, which was filed on August 29, 2025.  (ECF No. 24).  Gomez filed a response to this motion on September 15, 2025 (ECF No. 26), and Defendants filed a reply on October 9, 2025 (ECF No. 29).  An Order of Reference was entered on March 5, 2025, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 19).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 24)** be **GRANTED**.

## II.    REPORT

### A.     Gomez's Allegations

In his complaint, Gomez[1] brings claims against numerous individuals arising out of his incarceration at the G. Robert Cotton Correctional Facility ("JCF"), where he was housed from June 29, 2023, to January 30, 2024.[2]   (ECF No. 1; ECF No. 24-2, PageID.120).  Specifically named as defendants are the following individuals who worked at JCF: Corrections Officer ("CO") John Rodgers, CO Taron Brown, CO Aaron Burgess, CO Barry Lamb, CO Amanda Russell, Lt. Derek Gowdy, Lt. Timothy Johnson, Captain Shane Rennells, Assistant Resident Unit Supervisor ("ARUS") Christopher Young, and Prison Counselor ("PC") Jennifer Crane (collectively, the "MDOC Defendants").  (ECF No. 1).

In his complaint, Gomez alleges as follows with respect to the MDOC Defendants:

1.      While in segregation, CO Rodgers, CO Brown, CO Burgess, CO Lamb, CO

---

[1] In his complaint, Gomez claims to be gender dysphoric however, he does not specifically identify any preferred pronouns.  Moreover, although Gomez makes some assertions about being "a woman," Gomez also indicates that at other times, "I feel like a man stuck in between …." (ECF No. 1, PageID.3, 8).  Given the lack of clarity on how Gomez prefers to be addressed, the Court will use masculine pronouns.

[2] Gomez's complaint also makes allegations against staff at the Macomb Correctional Facility ("MRF") and the Saginaw Correctional Facility ("SRF").  While those allegations are similar to the ones against the JCF staff, Gomez makes no allegations of joint action between the staff at the three prisons, and the docket reflects only the claims against the JCF defendants.  Accordingly, as discussed below, *see infra* at 13-16, pursuant to Rule 21, Gomez's claims against MRF and SRF employees should be severed from this action.

Russell, Lt. Gowdy, Lt. Johnson, and Captain Rennells threatened and attacked Gomez and issued him false tickets for being a "Jesus freak"; and

2.      These individuals, as well as ARUS Young and PC Crane, beat Gomez, sprayed him with chemical spray, stripped him, placed him in a hot shower for over 20 minutes, which burned him; made fun of his gender dysphoria; called him crude sexual names; and forced him to stand naked in front of "a bunch of men[.]"

(*Id.*, PageID.2-3).

The MDOC Defendants now move for summary judgment, arguing that, prior to filing this lawsuit, Gomez failed to properly exhaust his administrative remedies as to the vast majority of his claims.  (ECF No. 24).

**B.      Standard of Review**

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (internal quotations omitted).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander,* 576 F.3d at 558 (internal quotations omitted).

### C.    Analysis

In their motion, the MDOC Defendants argue that Gomez failed to properly exhaust his administrative remedies as to the vast majority of the claims he asserts against them, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[3]  (ECF No. 24).  These arguments are addressed below.

#### 1.    *The Relevant Policies*

---

[3] Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion."  *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).  In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself."  *Jones*, 549 U.S. at 200.

As explained further herein, within the MDOC, different types of grievances must be exhausted in different ways to some extent.  Thus, an understanding of the relevant MDOC grievance policies is important.

### a.      The MDOC's "General" Grievance Policy

In Michigan's correctional facilities, prisoner grievances generally are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "General Grievance Policy").[4]  (ECF No. 24-4).  A state prisoner must first complete the process outlined in the General Grievance Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶ C).  The General Grievance Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id.* at ¶¶ W, CC).  If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id.* at ¶ JJ).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id.* at ¶ NN).  Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.  (*Id.* at ¶ C).

### b.      The MDOC's Prison Rape Elimination Act ("PREA") Policy

---

[4] The events at issue in the complaint fall under both the 2019 and 2023 versions of the Policy. Because the differences between versions are immaterial to the issues before the Court, the Court will cite to the 2023 version.

MDOC Policy Directive 03.03.140, entitled "Sexual Abuse and Sexual Harassment of Prisoners – Prison Rape Elimination Act (PREA)" (the "PREA Policy"), prohibits sexual contact among and with prisoners, as well as sexual abuse and harassment committed by staff against prisoners.  (ECF No. 24-6).  The PREA Policy defines sexual abuse of a prisoner by an employee broadly to encompass any intentional contact of sexual organs or of a sexual nature.  (*Id.* at ¶ S).  The PREA Policy further sets forth the process for prisoners to report prohibited conduct.  (*Id.* at ¶¶ TT-XX).  A PREA claim also may be made by filing a general grievance, as the PREA Policy states:

> If prisoners utilize the [General Grievance Policy] to report an allegation of sexual abuse, the facility Grievance Coordinator shall forward the sexual abuse allegation to the facility PREA Coordinator for further handling in accordance with this [PREA Policy], and the sexual abuse grievance shall be removed from the grievance process. The prisoner shall be notified in writing that this has occurred.

(*Id.* at ¶VV).  Relatedly, the General Grievance Policy provides:

> Grievances filed regarding sexual abuse, including those filed by a third party, shall not be processed as grievances under this policy but shall be reported in accordance with [the PREA Policy].  Any grievance submitted under this policy that contains an allegation of sexual abuse shall be copied by the Grievance Coordinator and forwarded to the PREA Coordinator for investigative referral if warranted.  The original grievance shall be returned to the prisoner. If the grievance also includes a non-PREA grievable issue, it will need to be refiled by the prisoner on the appropriate Prisoner/Parolee Grievance form.

(ECF No. 24-4, ¶ D).

> 2.      *Defendants Concede that Gomez May Proceed on Certain Claims Against Lt. Gowdy and CO Lamb*

As set forth above, complaints about sexual abuse, as defined by the PREA Policy,

6

are subject to a different reporting process than other claimed rights violations.  (ECF No. 24-6, PageID.159).  Attached to the MDOC Defendants' motion is an affidavit of MDOC Litigation Specialist Doug Kline explaining that the Administrative Investigations Management ("AIM") database tracks all allegations of employee work rule violations, including any PREA complaints and investigations under PD 03.03.140.  (ECF No. 24-2). Kline attests that he searched the database of AIM investigations and found that there was one investigation involving Gomez and the allegations at in this lawsuit – *i.e.*, AIM #48299 – which arose out of a PREA complaint Gomez filed on or around February 1, 2024.  (*Id.*, PageID.117-18).

According to Gomez's PREA complaint, on December 26, 2023, he was forced to strip naked in front of unspecified male corrections officers, who laughed at Gomez, made fun of him about being gender dysphoric, and threatened to "have [him] raped if [he] spoke too much" and "for being a faggot."  (*Id.*, PageID.121).  Kline further attests:

> 7.  I have reviewed the investigation report for AIM #48299, and Lt. Gowdy and CO Lamb were the only MDOC Defendants investigated in AIM #48299.
>
> 8.  Besides the claims Gomez made in his PREA complaint, the AIM #48299 investigation encompassed whether [Gomez] was subjected to excessive force during the December 26, 2023, incident as he was forcibly moved from his cell using a chemical agent, taken to the bathroom, and given a hot shower that allegedly burned him.

(*Id.*, PageID.118).[5]

---

[5] Kline further attests that "[d]ue to the sensitive nature of PREA investigations, the investigation report for AIM #48299 cannot be provided to [Gomez] and cannot be made a part of the public record." (ECF No. 24-2, PageID.118).

In their motion for summary judgment, the MDOC Defendants assert that because only Lt. Gowdy and CO Lamb were investigated in AIM #48299, that PREA complaint cannot have exhausted claims against any of the other defendants in this matter, and Gomez did not identify, in his PREA report or otherwise, any other corrections officers involved in the alleged unlawful conduct. (ECF No. 24, PageID.110; ECF No. 24-2, PageID.121). Thus, Gomez's PREA-related claims against Lt. Gowdy and CO Lamb will move forward at this time.

At the same time, the MDOC Defendants acknowledge that "in addition to the sexual-abuse allegations in Gomez's PREA complaint, the investigation also encompassed whether he was subjected to excessive force during the December 26, 202[3] encounter." (ECF No. 24, PageID.111). The MDOC Defendants indicate that this was likely because Gomez's sexual abuse claims and his non-PREA excessive force claims were intertwined, as they arose out of the same conduct. (*Id.*). Regardless, Lt. Gowdy and CO Lamb do not contest exhaustion as to Gomez's PREA sexual abuse claims or his excessive force claims, "as these claims were investigated in AIM #48299." (*Id.*). Thus, Gomez's excessive force claims against Lt. Gowdy and CO Lamb will also move forward at this time. However, as discussed in the next section, to the extent Gomez now seeks to plead any other claims against Lt. Gowdy or CO Lamb, such claims are not fully exhausted and should therefore be dismissed.[6]

---

[6] In his response to the MDOC Defendants' motion for summary judgment, Gomez alleges that when he "tried to file a PREA grievance [he] was told there is no more such thing as a PREA

> 3.      *Gomez Did Not Exhaust His Other Claims Against*
> *Lt. Gowdy and CO Lamb, and He Did Not Exhaust*
> *Any Claims Against the Remaining MDOC Defendants*

While the MDOC Defendants concede that Gomez exhausted his PREA and related excessive force claims as to Lt. Gowdy and CO Lamb, they argue that Gomez did not exhaust any other claims against those two defendants, and that he did not exhaust any of his claims against CO Rodgers, CO Brown, CO Burgess, CO Russell, Lt. Johnson, Captain Rennells, ARUS Young, or PC Crane.  (ECF No. 24, PageID.106-13).  In support of this argument, the MDOC Defendants provide Gomez's "MDOC Prisoner Step III Grievance Report," which shows that Gomez did not pursue any Step III grievances arising out of events that occurred at JCF.  (ECF No. 24-5).  Thus, the MDOC Defendants have proffered evidence that the *non-sexual-abuse claims* Gomez raises in his complaint – such as his claims of retaliation, religious discrimination, harassment, and the issuance of "false tickets"[7] – were not properly exhausted under the General Grievance Policy, as is required.

---

Grievance Procedure!"  (ECF No. 26, PageID.166).  The MDOC Defendants acknowledge that the April 2021 version of the PREA Policy ended the prior two-step PREA grievance process.  (ECF No. 29, PageID.174) (citing ECF No. 24-6 at ¶ VV).  However, the PREA Policy still provides that prisoners can make PREA reports verbally or in writing *in any manner*.  (*Id.* at ¶ UU).  Indeed, the very PREA complaint related to Gomez's allegations against Lt. Gowdy and CO Lamb was written on a non-PREA (General Grievance Policy) form.  (ECF No. 24-2, PageID.121).  This shows that Gomez was able to obtain and submit a grievance form, which was then received and processed, resulting in an investigation under the PREA Policy.  Thus, where Gomez has provided no evidence in support of his assertion that he was prevented from filing additional PREA complaints, and the PREA Policy specifically provides multiple ways in which such complaints can be made, Gomez fails to raise a material question of fact on the issue.

[7] It appears from the face of Gomez's complaint that he is alleging that while he was housed at JCF, he was issued false misconduct tickets in retaliation for his religious beliefs (*e.g.*, "many [COs] … gave me false tickets for being a 'Jesus freak!'").  (ECF No. 1, PageID.2).  However, a claim that a misconduct ticket was issued for a retaliatory purpose must be exhausted under the General Grievance Policy.  (ECF No. 24-4, ¶ P(9) ("if the prisoner wishes to pursue a claim that

*See Perkins v. Johnson,* No. 23-11530, 2024 WL 4481462, at *5 (E.D. Mich. Aug. 13, 2024) ("Perkins' claim in this case is not that *Defendants* sexually abused him, which claim he would have needed to exhaust by filing a PREA grievance …. As such, his claim against Defendants for their alleged failure to protect him needed to be exhausted under the three-step general grievance process.") (emphasis in original); *see also Grover v. Lange*, No. 1:21-cv-252, 2022 WL 485028, at *4 (W.D. Mich. Jan. 14, 2022) (holding that only "allegations of sexual abuse, as defined by the [PREA] policy" can be exhausted under the PREA Policy and "[a]ll other claims must be reported pursuant to the MDOC's familiar three-step grievance process"). As Gomez did not pursue any grievances arising out of JCF to Step III under the General Grievance Policy, the MDOC Defendants maintain that he failed to exhaust any non-sexual-abuse claims against them.

In response, Gomez does not rebut the evidence that he did not pursue any Step III grievances arising out of events that occurred at JCF. Rather, he asserts: "I was unable to pursue grievance issues to Step III due to said people retaliating against me and not filing my paperwork properly and throwing my mail away which in turn made it impossible for me to do so!" (ECF No. 26, PageID.166). However, a prisoner cannot overcome a properly supported summary judgment motion on the basis of exhaustion by simply asserting, without any corroborating evidence, that the grievance process was unavailable to him for some reason. Rather, as in all cases, the prisoner must make an affirmative showing with

---

retaliation is the basis for a Class I misconduct, they must file a grievance on the sole issue of retaliation"), ¶ P(11) (same for Class II and III misconducts)). As noted, Gomez did not pursue any Step III grievances out of events occurring at JCF. Thus, any such claims are not properly exhausted.

proper evidence to at least raise a genuine issue of material fact as to the grievance process' alleged unavailability. *See Alexander*, 576 F.3d at 558.  Here, Gomez fails to do so.

Gomez's assertions are unsworn, and he does not provide any evidence to support his contention that his grievances were not filed or were thrown away.  Numerous cases have held that where an inmate simply claims to have filed (or tried to file) a grievance, but the MDOC has no record of it, the inmate must at least produce *some* evidence – such as a copy of the grievance – as proof that he in fact filed (or attempted to file) one.  *See, e.g., Sango v. Bastian,* No. 2:15-cv-106, 2016 WL 3040772, at *2 (W.D. Mich. Apr. 1, 2016) ("Plaintiff has not attached any of the goldenrod copies to his response brief and has made no attempt to show that he actually tried to grieve the issues involved in this complaint."); *Valdes v. Evans,* No. 20-6095, 2021 WL 7627520, at *3 (6th Cir. Oct. 29, 2021) (prisoner did not show that he exhausted his administrative remedies as a matter of law because he failed to submit records of his alleged grievances into the district court record); *McSwain v. West,* No. 20-12684, 2021 WL 6066354, at *7 (E.D. Mich. Sept. 27, 2021) (prisoner did not raise a question of material fact as to whether he properly exhausted administrative remedies because he did not submit any evidence showing that he filed any relevant grievances; his "barebones assertion" that the grievance process was unavailable to him failed).  If this was not the case, an inmate could circumvent the exhaustion requirement simply by falsely alleging that his grievance was lost or stolen.

In sum, while the MDOC Defendants admit that Gomez properly exhausted his PREA and related excessive force claims against Lt. Gowdy and CO Lamb, he failed to come forward with any evidence that he attempted to grieve all other non-sexual-abuse

11

allegations in his complaint.  Gomez thus failed to raise a material question of fact that he properly exhausted any such claims.  Accordingly, CO Rodgers, CO Brown, CO Burgess, CO Russell, Lt. Johnson, Captain Rennells, ARUS Young, and PC Crane are entitled to summary judgment, and all of Gomez's claims against them should be dismissed.  Similarly, Gomez's non-sexual-abuse (and related excessive force) claims against Lt. Gowdy and CO Lamb, which were required to be exhausted under the General Grievance Policy, should also be dismissed.

4.     *Gomez's Claims Against the Remaining Unserved Defendants, Except a "Dr. John Doe," Should be Dismissed* Sua Sponte

Also named as defendants in this matter are JCF CO Winehouse and Sergeant Johnson – neither of whom have been served – and several JCF John/Jane Does.  Because Gomez is proceeding *in forma pauperis*, the Court is required to *sua sponte* dismiss the complaint before service on a defendant if it determines the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 42 U.S.C. § 1997e(c).

Here, for the reasons set forth above, *supra* at 9-12, except as to a "Dr. John Doe," the Court finds that Gomez's non-sexual-abuse allegations against these individuals were not properly exhausted and, thus, fail to state a claim upon which relief can be granted.  Similarly, for the reasons set forth above, *supra* at 6-8, Gomez cannot proceed against these individuals with the claims exhausted in AIM #48299.  (ECF No. 24-2, PageID.118).  Thus, CO Winehouse, Sergeant Johnson, and the John/Jane Does should be dismissed as defendants in this matter.

12

However, in his complaint, Gomez also alleges that a "Dr. John Doe" defendant who worked at JCF called him names and was "involved in [Gomez] being wrongfully beaten and sprayed with chemical spray." (ECF No. 1, PageID.2). Gomez also alleges that Dr. John Doe "put his hand on [Gomez's] thigh and looked at [him] and said something about doing something for a favor …." (*Id.*, PageID.5). As this is a Doe defendant, his identity is unknown, and he thus could not be served. However, this defendant does not appear on the docket and it may be the case that he is not represented in this action by MDOC counsel because he is employed by a non-MDOC entity that contracted with the MDOC to provide medical care to MDOC inmates. Moreover, in his affidavit, Kline makes no mention of this Dr. John Doe, and it is thus unclear whether the above analysis about Gomez's PREA complaint and related excessive force claim applies equally to this defendant. (ECF No. 24-2). Accordingly, although this Dr. John Doe defendant cannot presently be served due to his unknown identity, the Clerk of Court should be instructed to add him as a defendant in this case.

### 5. *Gomez's Claims Against the MRF Defendants and The SRF Defendants Should be Severed from this Action*

All of the foregoing analysis applies to the dozen-plus defendants who worked at JCF. However, as noted above, *supra* at 2 n. 2, Gomez's complaint also makes somewhat similar allegations against defendants (most of whom are John/Jane Does) from two other prisons, MRF and SRF. For example, Gomez alleges that while at MRF, he was forced to remove his clothing in front of other males, was tormented by guards about his gender dysphoria, was "forced to sit up in [the] control center all night," and had his "documents"

confiscated.  (ECF No. 1, PageID.6).  Gomez also contends that "Lt. Mandy shot [him] with the tazer saying 'got you bitch,'" and that six other unidentified Doe Lieutenants and COs shot him again with the tazer and smashed his face into the floor.  (*Id.*, PageID.6-7). As to SRF, Gomez alleges that while he "felt more safe" there than at any other prison, he's "had some issues" there, as well.  (*Id.*, PageID.7).  However, the only person mentioned by Gomez as a possible defendant from SRF is his "therapist guy or psych Mr. Barnhart," and the only allegation Gomez makes against Barnhart is that he "has been very inappropriate" with Gomez.  (*Id.*, PageID.8).

Although the allegations about Gomez's treatment at MRF and SRF are of the same general nature as his allegations about his treatment at JCF, they do not arise out of the same transaction or occurrence.  They also involve different facts, different defendants, and different timeframes.  And, Gomez does not allege any sort of joint action or conspiracy between the defendants at the three different prisons.  Thus, the MRF and SRF defendants are misjoined in this action because joinder of multiple defendants in a single action is permitted only where the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; and ... any question of law or fact common to all defendants will arise in the action."  *See* Fed. R. Civ. P. 20(a)(2).[8]

---

[8] Courts have also found that a prisoner's "attempt to join together a number of unrelated claims and defendants into one action would thwart the purpose of the [PLRA], which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts." *Green v. Callahan*, 14-11453, 2014 WL 1652335, at *2 (E.D. Mich. Apr. 23, 2014) (citing *Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004)).  This is so because the PLRA contains a "three-strikes" provision "requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied." *Id.* (citing 28 U.S.C. § 1915(g)).  Thus, a prisoner who combines what are

Federal Rule of Civil Procedure 21, entitled "Misjoinder and Nonjoinder of Parties," provides that where a party has been misjoined in an action, dismissal of the action itself is not proper, but "the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  As the Third Circuit Court of Appeals explained:

> The effect of each option is quite different.  When a court "drops" a defendant under Rule 21, that defendant is dismissed from the case without prejudice.  *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1068 (3d Cir. 1979); *see also Elmore v. Henderson*, 227 F.3d 1009, 1011-12 (7th Cir. 2000) (Posner, J.).  When that occurs, the "statute of limitations is not tolled" because we treat the initial complaint "as if it never existed."  *Brennan v. Kulick,* 407 F.3d 603, 606 (3d Cir. 2005) (internal quotation marks omitted).  But when a court "severs" a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise.  *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n. 6 (3d Cir. 1999); *Elmore,* 227 F.3d at 1012.  The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period.  *Id.*
>
> Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is "just."

*DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (footnote omitted).

The Sixth Circuit also holds that "[t]he manner in which a trial court handles misjoinder lies within that court's sound discretion." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) (citing 3A J. Moore and J. Lucas, *Moore's Federal*

---

really separate cases into one case essentially circumvents what is "an attempt by Congress to curb frivolous prisoner litigation." *Id.* (citing *Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998)). *See also Reyes v. Landfair*, No. 24-11243, 2025 WL 410079, at *7 (E.D. Mich. Feb. 5, 2025).

15

*Practice* ¶ 21.03 at 21-26 (1986)).

Here, although Section 1983's three-year statute of limitations does not seem to be an issue given that Gomez's misjoined claims relate to his incarcerations after he was transferred to MRF on January 30, 2024, that was over two years ago. Thus, out of an abundance of caution, the appropriate remedy is to sever Gomez's claims against the MRF and SRF defendants from this case. Gomez's severed claims against the MRF defendants may be filed as a new case, by way of a new complaint that he must file, which can be docketed with the original filing date, so as not to run afoul of § 1983's three-year statute of limitations. Similarly, Gomez's severed claims against the SRF defendants may be filed as a new case, by way of a new complaint that he must file, which also can be docketed with the original filing date. Gomez should be given 30 days to file his new complaints against the MRF defendants and the SRF defendants, respectively, should he choose to do so, and he must pay the filing fee or complete the Waiver of Prepayment of Filing Fee form for each such new complaint.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 24)** be **GRANTED**. All of Gomez's claims against CO Rodgers, CO Brown, CO Burgess, CO Russell, Lt. Johnson, Captain Rennells, ARUS Young, PC Crane, CO Unknown Winehouse, Sgt. Unknown Johnson, and the John and Jane Does should be dismissed. As for the JCF Defendants, Gomez should be permitted to proceed *only* with his PREA and related excessive force claims against Lt. Gowdy and CO Lamb arising out of the December 26, 2023 incident. Additionally, the Clerk of Court

16

should be instructed to add Dr. John Doe as a defendant in this case.

**IT IS FURTHER RECOMMENDED** that Gomez's claims against the MRF defendants and the SRF defendants be severed from this case, and that Gomez be given 30 days to file new complaints against the MRF defendants and the SRF defendants, respectively, which complaints should be docketed with an original filing date of June 27, 2024.

Dated: February 24, 2026                              s/David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                       United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served

with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 24, 2026.

s/Julie Owens
JULIE OWENS
Case Manager

18